# UNITED STATES DISTRICT COURT
for the
Southern District of California

**FILED**
Dec 16 2024
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY  s/ VeronicaCota  DEPUTY

In the Matter of the Search of  )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No.   24MJ9084
Red Apple iPhone  )
IMEI: 350342024194765  )
HSI Evidence Bag: IA00081876  )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the    Southern    District of   California   , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. Section 841 | Possession with Intent to Distribute a Controlled Substance |
| 18 U.S.C. Section 924(c) | Use, Carry or Possess a Firearm in Relation to or in Furtherance of a Drug Felony |

The application is based on these facts:
See Attached Affidavit of Homeland Security Investigations Special Agent Adam Green, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

ADAM B GREEN
Digitally signed by ADAM B GREEN
Date: 2024.12.13 11:05:21 -08'00'
*Applicant's signature*

Special Agent Adam Green, HSI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
   telephone    *(specify reliable electronic means)*.

Date:   12/16/24

*Judge's signature*

City and state:   El Centro, California      HON. LUPE RODRIGUEZ JR., U.S. MAGISTRATE JUDGE
*Printed name and title*

# **ATTACHMENT A**

PROPERTY TO BE SEARCHED

The following property is to be searched:

    Red Apple iPhone

    IMEI: 350342024194765

    HSI Evidence Bag: IA00081876

The Target Device is currently in the custody of Homeland Security Investigations and located at 2051 N. Waterman Ave, STE 100, El Centro, California.

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone and electronic storage devices for evidence described below. The seizure and search of the cellular telephone and electronic storage devices shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone and electronic storage devices will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of October 21, 2024, up to and including November 22, 2024.

a. tending to indicate efforts to transport and distribute controlled substances within the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the transportation and distribution of controlled substances within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in distribution of methamphetamine, or some other federally controlled substance, within the United States and destinations beyond;

d. tending to identify travel to or presence at locations involved in the transportation and distribution of controlled substances within the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Device; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Section 841 and Title 18, United States Code, Section 924(c).

# AFFIDAVIT

I, Special Agent Adam Green, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic device:

> Red Apple iPhone
>
> IMEI: 350342024194765
>
> HSI Evidence Bag: IA00081876

as further described in Attachment A, and to seize evidence of crimes, specifically violations of Title 21, United States Code, Section 841 and Title 18, United States Code, Section 924(c) as further described in Attachment B. The requested warrant relates to the investigation and prosecution of Daymon Blade LOPEZ ("Defendant") for possession with intent to distribute approximately 16.3 grams of fentanyl while in possession of a firearm. The Target Device is currently in the custody of Homeland Security Investigations located at 2051 N. Waterman Ave, STE 100, El Centro, California.

2. The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the Target Device, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

## BACKGROUND

3. I am a Special Agent with the Department of Homeland Security and have been since January 29, 2023. I am currently assigned to the Calexico Assistant Special Agent-in-Charge. Your affiant is a law enforcement officer of the United States, within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code.

4. Your affiant has been employed with Homeland Security Investigations (HSI) since January 2023. During that period, your affiant attended the Criminal Investigator Training Program (CITP) academy at the Federal Law Enforcement Training Center (FLETC) between the months of April 2023 and July 2023. Your affiant also attended the Homeland Security Investigations Special Agent Training (HSISAT) academy at the Federal Law Enforcement Training Center (FLETC) between the months of July 2023 and October 2023. Your affiant had also been a Homeland Security Investigations Task-Force Officer from fall of 2020 to January 2023. In these capacities, your affiant's duties included investigating federal criminal offenses involving immigration violations, customs' violations, narcotics violations, firearms violations and child exploitation violations.

5. Furthermore, your affiant was a peace officer in the State of California from 2008 to 2023 for the Imperial County Sheriff's Office and the Brawley Police Department. During this period, your affiant was trained and worked on multiple cases involving crimes against persons (homicides, assaults, and death investigations), crimes against property, narcotics crimes, and sex crimes (including rape, child exploitation, and child pornography). Your affiant held the ranks of Sheriff Deputy, Police Officer, Police Agent, Police Sergeant, Investigations Sergeant, and Taskforce Commander (Sergeant). Your affiant also attended the Ben Clark Training Program (Police Academy) at the Riverside Sheriff's Office in Riverside, CA between the months of June 2007 and January 2008.

6. During this time, your affiant received over 1000 hours of advanced officer training. Your affiant held a California Peace Officer Standardized Training (P.O.S.T.) Basic, Intermediate, and Advanced certificate and had attended no less than 1500 hours of California P.O.S.T. training including, but not limited to: Youth Violence, Sexual Assault Investigations, Human Trafficking, Gangs, Environmental Crimes, Terrorism Liaison Officer, Supervisory Course, and the ICI Detective Symposium.

7. During my tenure with HSI, I have participated in the investigation of various narcotics trafficking organizations involved in the importation and distribution of

controlled substances into and through the Southern District of California. Through my training, experience, and conversations with other law enforcement officers experienced in narcotics trafficking investigations, I have gained a working knowledge of the operational habits of narcotics traffickers, in particular those who attempt to import narcotics into the United States from Mexico at Ports of Entry and further distribute narcotics on to locations throughout the United States.

8. I am aware that it is common practice for narcotics traffickers to work in concert utilizing cellular telephones, computers, and computer-related devices, such as USB memory sticks, to maintain and store communications and related items with co-conspirators in order to further their criminal activities. A common tactic utilized by narcotics traffickers is to transport controlled substances within the United States by concealing the controlled substances in vehicles that travel within the United States, specifically, within Imperial County prior to distribution of the controlled substances. With respect to the transportation and distribution of narcotics in this manner, I am aware that narcotics traffickers in Mexico and the United States frequently communicate with the individuals responsible for transporting and distributing the narcotics within the United States. These communications can occur before, during and after the narcotics are transported and distributed within the United States. For example, prior to the transportation, narcotics traffickers frequently communicate with the driver regarding arrangements and preparation for the narcotics transportation. When the transportation is underway, narcotics traffickers frequently communicate with the driver to remotely monitor the progress of the narcotics, provide instructions to the driver and warn accomplices about law enforcement activity. When the narcotics have been transported further into the United States, narcotics traffickers may communicate with the driver to provide further instructions regarding the transportation of the narcotics for distribution within the United States.

9. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions

set forth in this affidavit, I am aware that conspiracies involving distribution of controlled substances generate many types of evidence including, but not limited to, cellular phone and computer-related evidence such as voicemail messages referring to the arrangements of payment, names and contact information for co-conspirators, photographs, text messages, emails, messages from text messaging applications such as WhatsApp, social networking messages, and videos reflecting co-conspirators or illegal activity. I am also aware that cellular telephones (including their SIM card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones of individuals involved in the importation of narcotics may yield evidence:

a. tending to indicate efforts to import controlled substances from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of controlled substances from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Device; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

10. On November 21, 2024, at approximately 1:43 p.m., Homeland Security Investigations Special Agents identified a Telegram (social media site) page that was offering cocaine, a Schedule II controlled substance, for sale. Special Agent J. Dellinger contacted the owner of the page, later identified as Daymon Blade LOPEZ (LOPEZ), in reference to the cocaine for sale and represented himself as a civilian. LOPEZ offered to sell an ounce of cocaine for $900 and requested that SA Dellinger meet him in Calipatria, California.

11. At approximately 4:42 p.m., Special Agents and Imperial County Sheriff's Office Border Crime Suppression Team Investigators arrived in the area. LOPEZ described himself in the chat. Special Agent A. Green witnessed a male subject, later identified as LOPEZ, walking towards the undercover officer's vehicle. As LOPEZ approached the vehicle, the undercover officer drove away and Special Agents detained LOPEZ. On LOPEZ's person, in the front right pocket was a Polymer80 Inc. P80 un-serialized pistol. The semi-automatic pistol was loaded with one 9mm live ammunition round in the chamber and eight 9mm live ammunition rounds in the magazine.

12. A further search of LOPEZ revealed he was in possession of 16.3 grams of a white powdery substance believed to be cocaine based on the purchase agreement. This substance was later field tested, yielding a positive result for fentanyl.

13. LOPEZ told Special Agents that he was a convicted felon and on probation for prior gun charges. It was later confirmed that LOPEZ was, in fact, a convicted felon for weapons violations. LOPEZ was transported to the Imperial County Sheriff's Office to be interviewed. SA Green and Imperial County Sheriff's Office Sergeant R. Patterson conducted the interview.

14. LOPEZ was advised of his Miranda Rights and stated to investigators that he believed he was in possession of about 10 grams of cocaine. He stated that he had not weighed it and estimated by looking at it. LOPEZ stated that he did not know it was fentanyl and believed that he was selling cocaine. LOPEZ said the firearm was his and

that he knew he was unable to possess a firearm due to his felony conviction. LOPEZ told SA Green that the laser attached to the pistol worked well and was accurate when shot with. LOPEZ further admitted that his felony conviction had occurred just over one month prior to this date.

15. Thereafter, SA Green was able to confirm that LOPEZ was convicted on October 14, 2024 in the Imperial County Superior Court under Case JCF008082 for being in violation of California Penal Code 25850, Carrying a Loaded Firearm in Public. SA Green was able to inspect the firearm. SA Green saw that the lower receiver of the firearm was from a company called Polymer80 Inc. out of Dayton, Nevada. This firearm is often referred to as a ghost gun. SA Green also saw that the ammunition in the firearm had markings on the bullet. These markings were Speer 9mm Luger and Ammo Inc 9mm Luger. Further research showed that Ammo Inc 9mm Luger ammunition is manufactured in Manitowoc, Wisconsin; while Speer 9mm Luger ammunition is manufactured in Lewiston, Idaho.

16. LOPEZ was placed under arrest and charged with a violation of Title 21, United States Code section 841(a)(1) for Possession of a Controlled Substance with Intent to Distribute; and Title 18, United States Code section 924(c) for Carrying a Firearm in Relation to or in Furtherance of a Drug Felony. LOPEZ was booked into the GEO-El Centro facility to await initial appearance.

17. The Target Device was found on LOPEZ's person at the time of arrest.

18. Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the Target Device. In light of the above facts and my experience and training, there is probable cause to believe that Defendant was using the Target Device to communicate with others to further the transportation of illicit narcotics into the United States. Further, in my training and experience, narcotics

traffickers may be involved in the planning and coordination of a drug smuggling event in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the narcotics. Based on my training and experience, it is also not unusual for individuals, such as Defendant, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the Target Device for data beginning on October 21, 2024, up to and including November 22, 2024, the day after LOPEZ's arrest.

## METHODOLOGY

19. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature, and types of services to which the device is subscribed, and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored

that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

20. Following the issuance of this warrant, your affiant will collect the Target Devices and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

21. Based on the foregoing, identifying, and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

**PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE**

22. Law enforcement has not previously attempted to obtain the evidence sought by this warrant. Consent was not given.

/ / /

/ / /

/ / /

/ / /

/ / /

## CONCLUSION

23.     Based on the facts and information set forth above, I submit there is probable cause to believe that a search of the Target Device will yield evidence of Defendant's violations of Title 21, United States Code section 841(a)(1) for Distribution of a Controlled Substance; and Title 18, United States Code section 924(c) for Use, Carry or Possess a Firearm in Relation to or in Furtherance of a Drug Felony. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the item listed in Attachment A, and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

ADAM B GREEN
Digitally signed by ADAM B GREEN
Date: 2024.12.13 11:06:29 -08'00'

Special Agent Adam Green
Homeland Security Investigations

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this <u>16th</u> day of December, 2024.

_____ 8:59 a.m.
HON. LUPE RODRIGUEZ, JR.
UNITED STATES MAGISTRATE JUDGE

9

# **ATTACHMENT A**

PROPERTY TO BE SEARCHED

The following property is to be searched:

    Red Apple iPhone

    IMEI: 350342024194765

    HSI Evidence Bag: IA00081876

The Target Device is currently in the custody of Homeland Security Investigations and located at 2051 N. Waterman Ave, STE 100, El Centro, California.

# ATTACHMENT B

## ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone and electronic storage devices for evidence described below. The seizure and search of the cellular telephone and electronic storage devices shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone and electronic storage devices will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of October 21, 2024, up to and including November 22, 2024.

a. tending to indicate efforts to transport and distribute controlled substances within the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the transportation and distribution of controlled substances within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in distribution of methamphetamine, or some other federally controlled substance, within the United States and destinations beyond;

d. tending to identify travel to or presence at locations involved in the transportation and distribution of controlled substances within the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Device; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Section 841 and Title 18, United States Code, Section 924(c).